HARRY GARCÍA DOMINICCI ET AL., Petitioners, *v.* DISTRICT COURT OF SAN JUAN, PUERTO RICO, HON. WILLIS RAMOS VÁZQUEZ, JUDGE, Respondent; THE PEOPLE OF PUERTO RICO, Intervener.

No. 1. Argued November 10, 1949.—Decided March 31, 1950.

*Francisco Hernández Vargas* for petitioners. *José C. Aponte, Acting Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court,* and *Fernando Fornaris, Jr., Assistant Fiscal,* for The People, intervener.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

The petitioners were sentenced by the Municipal Court of Río Piedras for the alleged offense of unlawful assembly. They appealed to the District Court of San Juan which found them guilty and imposed a fine of $25 or in default thereof to serve one day in jail for each dollar left unpaid. To review this judgment we issued a writ of certiorari. Since the error assigned is directed solely against the insufficiency of the complaint to constitute the crime of unlawful assembly, we shall copy the pertinent portion of the complaint in order to examine it in the light of the law which defines the crime alleged to have been committed. It reads:

. . . "that on September 23, 1948 about eleven o'clock . . . in Muñoz Rivera Street of Río Piedras, . . . the defendants [naming them] and other persons then and there unlawfully, willfully and maliciously did assemble and gather together illegally in order to protest against the acts of Mr. Jaime Benítez, Chancellor of the University of Puerto Rico, executing said act tumultuously, violently and disorderly, by making great and unusual noises, whistling, jeering and uttering boisterous exclamations, thereby constituting said defendants and their associates a disorderly procession of about 500 persons who marched along Muñoz Rivera Street, towards the University of Puerto Rico, with the intent of disturbing the peace in said university, and that upon being required by the complainant who is and was at that time an officer of the Insular Police, who was there in the discharge of his duties as such, and by other police officers who were also there in the discharge of their official duties, to change course along José de Diego Street, or Robles Street, inasmuch as they were not allowed to reach or approach the University of Puerto Rico, and also because they had completely paralyzed the traffic along Muñoz Rivera Street, the defendants herein and their associates, disregarded, disobeyed and defied violently the aforesaid demand

and orders of the Insular Police, and proceeded to march riotously and tumultuously along said Muñoz Rivera Street first, most of the paraders proceeding later to sit on the very street and sidewalks, completely covering it from one sidewalk to the other, the defendants and their associates thereby increasing the total paralization of the traffic for about half an hour at the end of which they attempted once more to proceed with their parade in a violent manner for which reason they had to be dispersed by the complainant and the other police officers who were there, the defendants and their associates thereby causing, by their demeanor a disturbance, as they actually did disturb the order and peace of the entire neighborhood.

"This fact is contrary to the law and to the peace and dignity of the People of Puerto Rico."

 The offense of unlawful assembly is defined in § 362 of the Penal Code, as it appears in the Compilation of the Revised Statutes and Codes of Puerto Rico, 1911 edition, page 926, as follows:

"Whenever two or more persons assemble together to do an unlawful act, and separate without doing or advancing toward it, or do a lawful act in a violent, boisterous, or tumultuous manner, such assembly is an unlawful assembly."

It may be argued that since the complaint alleges that the assembly was executed "tumultuously, violently and disorderly" it follows the letter of the statute and consequently adduces facts sufficient to constitute the offense defined in § 362. However, if we read the complaint in its entirety we shall notice that it states facts constituting the alleged "tumultuous, violent and disorderly" conduct, to wit: In making great and unusual noises, whistling, jeering and uttering boisterous exclamations" and that upon being demanded by the police to change their course along another street, the paraders disobeyed the order of the police and proceeded to march along Muñoz Rivera Street, sitting on the street and on its sidewalks completely covering it from one end to another thereby paralyzing the traffic along said street for about half an hour, whereupon they were dispersed by the police. Hence we should consider the complaint in the light

of the facts that the complainant regarded as sufficient to constitute the tumultuous and disorderly conduct mentioned in § 362 of the Penal Code.

It is significant that unlawful assembly, under § 362 identical with § 407 of the California Penal Code, may be committed in two different ways, to wit: (1) when the assembly is intended to commit an unlawful act and the persons separate without doing or advancing towards it; and (2) when it intends to do a lawful act in a violent and tumultuous manner.

According to the complaint, the intention of the assembly was to protest against the actions of the Chancellor of the University of Puerto Rico who is a public officer; but the assembly was allegedly carried on in a tumultuous and disorderly manner. There is no question that the purpose of the assembly, that is to get together in order to proceed against the acts of a public officer, is a lawful act guaranteed by § 2 of the Organic Act,[1] and by § 4 of the Act To Define the Rights of the People approved February 27, 1902.[2] (Compilation of Revised Statutes and Codes of Puerto Rico, 1911 ed., p. 61.)

As we have already pointed out, § 362 was copied from § 407 of the California Penal Code and the courts of that State have held that § 407 is a reaffirmation of the common law with respect to the offense of unlawful assembly and therefore the elements constituting said offense under the common law should be considered included in § 407 of the Penal Code. *People* v. *Kerrick*, 261 P. 756 (Cal. 1927.)

We shall now turn to the offense under the common law. In *Reg.* v. *Graham*, 16 Cox C.C. p. 427, it was said:

---

[1] Section 2 of the Organic Act, in its pertinent part, prescribes: "That no law shall be passed abridging . . . the right of the people peaceably to assemble and petition the Government for redress of grievances."

[2] Section 4 of the Act to Define the Rights of the People reads: "The People of Puerto Rico shall have the right peacebly to assemble for the common good and to apply to those invested with the powers of government for redress of grievances by petition or remonstrance."

"Now with regard to an unlawful assembly, what is an unlawful assembly? That has been laid down by the very highest authorities in these terms: An unlawful assembly is an assembly of persons with the intention of carrying out any common purpose, lawful or unlawful, in such a manner as to give firm and courageous persons in the neighborhood of such assembly ground to apprehend a breach of the peace in consequence of it."[3]

In *State* v. *Butterworth*, 142 A. 57 (N.J. 1928) it is said:

"In fact, in all the cases at common law where the indictment was for unlawful assembly it invariably appeared that there was riotous conduct, assaults, batteries, and commission of acts which threatened danger to life and property."

According to the facts stated in the complaint, there was no sufficient cause for fearing danger to life and property. The actions alleged therein consisted of jeers, boisterous exclamations and whistling, it being also alleged that the paraders disobeyed the orders of the police to march along Robles Street and that they proceeded along Muñoz Rivera Street, sitting on the street and covering it from one sidewalk to another thereby obstructing the traffic along said street for half an hour.

The nature of each act depends on the circumstances under which it was executed. Perhaps if this very act had been executed in a peaceful hamlet whose inhabitants were not used to the excitement and noises, its peace and order might be disturbed. But the events took place in the city of Río Piedras which is the seat of the University of Puerto Rico, with more than 5,000 students. And as said in *People* v. *Kerrick, supra,* pp. 759–760:

"Not every meeting where violent, boisterous and tumultuous conduct occurs may be denominated an unlawful assembly, even though that be the wording of the statute. It is particularly dangerous in a country where meetings are constantly held for

---

[3] The transcribed paragraph was cited with approval in *State* v. *Butterworth,* 142 A. 57 (N.J. 1928).

every conceivable purpose, many of them accompanied with much noise and excitement to lay down such a doctrine. At this time of the year in our country in almost every hamlet, and certainly in every city of any size, contests between the youth of schools and colleges are being staged which could not be characterized as anything other than violent, boisterous and tumultuous. Yet the communities are not alarmed and the public peace is not endangered. No one would for a moment characterize high school or college football games as unlawful assemblies. The statute was intended to prevent 'any tumultuous disturbance of the public peace by' two or more persons 'having no avowed, ostensible legal or constitutional object assembled under such circumstances and deporting themselves as to produce danger to the public peace and tranquility, and which excites terror, alarm and consternation in the neighborhood.' In re Charge to Grand Jury, 4 Pa. L. J. 29. The jury should consider, as we read again in Wharton's Cr. Law, § 1851, 'In determining the question of terror . . . whether rational and firm men, in charge of families, would have, under the circumstances, cause for anxiety; and in testing this it is necessary to take into account the hour at which the parties meet, the language used by them, and the acts done'."

We must bear in mind that the persons assembled intended to make use of their constitutional right to petition for redress of grievances. Upon referring to the importance of the right of assembly guaranteed by the First Amendment of the Federal Constitution, Judge Story said:

"This would seem unnecessary to be expressly provided for in a republican government, since it results from the very nature of its structure and institutions. It is impossible that it could be practically denied until the spirit of liberty had wholly dissapeared, and the people had become so servile and debased as to be unfit to exercise any of the privileges of freemen."

Story on the Constitution (5th ed.) § 1894.

■■ On the other hand, the State has a right to legislate for the maintenance of public order and it is our duty to uphold both rights, that of the government and that of the people, as far as possible; but the right of the people to assemble for redress of grievances may only be sacrificed when

public order is actually threatened and not merely when it is conceivable that it may be slightly affected. Comparing both rights, that of assembly to which the people is entitled and that of the State to keep public order, it can hardly be doubted that the right of assembly carries great weight. *Thomas* v. *Collins*, 323 U.S. 516 (1945).

Upon examining the complaint in the light of the acts characterized as violent, tumultuous and disorderly, including the obstruction of the traffic as stated above, which in effect does not show a disposition to commit violence, we believe that the right of assembly guaranteed by § 2 of the Organic Act and § 4 of the Act to Define the Rights of the People is controlling in the present case and consequently we must declare that the complaint does not adduce facts constituting the offense of unlawful assembly.

For the reasons stated the judgment will be reversed and the defendants acquitted.

Mr. Justice Snyder concurs in the result.

Mr. Justice Negrón Fernández did not participate herein.